IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ANTHONY DAWSON, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-11-1129 |
| JETTY PARTNERS, LLC, | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

*I. Background*

This employment discrimination case was filed by Plaintiff Anthony Dawson, who formerly worked as a bartender at Defendant's restaurant, The Jetty Restaurant & Dock Bar, located in Grasonville, Maryland. (Compl., ECF No. 1.) Dawson alleged that he was subjected to discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and Maryland state law, Md. Code Ann., State Gov't § 20-606 (LexisNexis 2009). Defendant has filed a motion to dismiss or, in the alternative, a motion for summary judgment.[1] (ECF No. 10.) The matter has been briefed (ECF Nos. 14, 15), and no hearing is necessary, Local Rule 105.6. The motion will be denied.

---

[1] In Count V, Dawson alleged his termination was contrary to Maryland public policy. (Compl. ¶¶ 48-51.) Plaintiff and Defendant agree this count should be dismissed. (Def.'s Mot. Summ. J. 2, ECF No. 10; Pl.'s Opp. 1-2, ECF No. 14.) For the reasons stated by Defendant (Def.'s Mot. Supp. Mem. 9), the Court concurs. Count V will be dismissed by separate order. Because the only argument made by Defendant pursuant to Federal Rule of Civil Procedure 12(b)(6) was that pertaining to the dismissed count, Count V, the remainder of the motion will be analyzed only under the standard for summary judgment.

## II.  *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.  The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).  Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## III.  *Undisputed Facts*

Dawson began working as a bartender for Defendant around June 2005 on an at-will basis. Roughly four years later, in June 2009, he was diagnosed with emphysema, a condition characterized by labored breathing after physical exertion.  In December 2009, Dawson obtained a placard for his automobile that permitted him to park in handicapped-designated parking spaces.  On weekends, the restaurant utilized two overflow parking lots some distance away from

the restaurant. In May 2010, Dawson injured his back. His last day at work was May 11, 2010. The remaining facts are disputed.

## IV. *Disability Discrimination*

### A. *Qualified Individual with a Disability*

Defendant contends it is entitled to summary judgment on Counts I and III, which assert termination on the basis of disability contrary to the ADA and Maryland law, respectively. Defendant disputes that Dawson may be considered a qualified individual with a disability given the allegations in his complaint and his sworn testimony before the Maryland Workers' Compensation Commission ("MWCC") that he was totally disabled and unable to work from May 9, 2010, to at least July 30, 2010. (Def.'s Mot. Summ. J. Supp. Mem. 5, ECF No. 10.) The Court has carefully perused both the complaint's allegations and Dawson's testimony before the MWCC and found nothing remotely like a statement of total disability for this period of time. Since Defendant does not dispute that Dawson is a qualified individual or that Dawson's diagnosis of emphysema is a disability within the meaning of the applicable statutes, the Court concludes this argument is not well-founded.

### B. *Reason for Discharge other than Disability*

Defendant's next argument in favor of summary judgment on Counts I and III is that the undisputed facts show that Dawson was discharged not because of his disability of emphysema but because of his back injury. Once again, Defendant refers to the complaint and Dawson's testimony before the MWCC to support its contention. Once again, the Court does not find the compelling evidence in those sources to which Defendant refers. In the complaint, Dawson alleged in paragraph 19, "Despite Plaintiff's notice to his employer of his injuries, on or about May 15, 2010, Defendant terminated Plaintiff's employment for failing to show up and work." A reasonable interpretation of that allegation is that the *stated* reason given by Defendant to

Dawson for termination was his failure to show up and work. It does not necessarily follow that Defendant's stated reason was its actual reason, particularly given Dawson's later allegation that Defendant terminated him solely on the basis of his disability. (Compl. ¶ 28.) As for the MWCC testimony, Dawson simply did not testify one way or the other as to the reason for his termination. This argument also fails. Defendant has failed to show it is entitled to summary judgment on Counts I and III.

### C. *Failure to Accommodate*

#### 1. *Request for Accommodation*

Defendant contends it is entitled to summary judgment on Counts II and IV, which assert federal and state statutory violations for alleged failure to accommodate Dawson's disability of emphysema. Under the ADA, an employer is required to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless such accommodation would impose undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A). Thus, Dawson must prove that (1) he is disabled within the meaning of the ADA, (2) Defendant had notice of his disability, (3) he could perform the essential function of his bartender's position with reasonable accommodation, and (4) Defendant refused to make reasonable accommodation. *See Rhoads v. FDIC*, 257 F.3d 373, 387 (4th Cir. 2001). Similarly, Maryland law forbids discharge of a disabled individual "only if a reasonable accommodation would enable . . . [him] to perform the essential functions of the position the person involved was hired to perform." *Md. Comm'n on Human Relations v. Mayor and City Council of Balt.*, 586 A.2d 37, 42 (Md. Ct. Spec. App. 1991) (interpreting forerunner to § 20-606).

Dawson's disability of emphysema is not in dispute, nor has Defendant disputed its awareness of his disability. What is in dispute is whether Dawson requested reasonable accommodation by seeking to park closer to the restaurant than the overflow lots and whether

4

reasonable accommodation was denied. The parties' competing affidavits show a genuine dispute of material fact on these points. Consequently, summary judgment on Counts II and IV is inappropriate.

### 2. Failure to Accommodate

Defendant alternatively argues it should receive summary judgment on Counts II and IV because it, in fact, accommodated Dawson's emphysema by offering a shuttle between the overflow lots and the restaurant for both employees and customers. Dawson counters that the shuttle was only offered three hours after his shifts began. Again, competing affidavits create a genuine dispute of material fact and make Counts II and IV unsuitable for summary judgment.

## V. Family and Medical Leave Act

Dawson's sixth count alleges Defendant violated the Family and Medical Leave Act ("FMLA") by failing to notify him of his eligibility for leave and by terminating him without notice of his rights under the statute. (Compl. ¶¶ 56, 57.) Defendant seeks summary judgment on this count on the basis that Dawson did not suffer from a serious health condition within the meaning of the FMLA and on the basis that Dawson failed to provide sufficient notice to Defendant to trigger the latter's obligations under the FMLA.

### A. Serious health condition

Dawson's claim under the FMLA is based on his back injury rather than his emphysema. Under the statute, an employee may be entitled to leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Pertinent to this case, "serious health condition" is defined to mean an illness, injury, impairment, or physical or mental condition that involves continuing treatment by a health care provider. 29 U.S.C. § 2611(11)(B). The regulations promulgated by the U.S. Department of Labor offer further definition of the term "continuing treatment":

> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (a) Incapacity and treatment.  A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
>
> (3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider.  The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.
>
> (4) Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30-day period shall be determined by the health care provider.
>
> . . .
>
> (e) Conditions requiring multiple treatments.  Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, for:
>
> (1) Restorative surgery after an accident or other injury; or
>
> (2) A condition that would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), or kidney disease (dialysis).

29 C.F.R. § 825.115.

Further, the term "incapacity" is defined as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore [sic], or recovery therefrom."  29 C.F.R. § 825.113(b).  Also, the regulations define "treatment" in the following manner:

> The term "treatment" includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition.  Treatment does not include routine physical examinations, eye examinations, or dental

> examinations. A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen). A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.

29 C.F.R. § 825.113(c).

It must be resolved whether Dawson was incapacitated for more than three consecutive days. He stated in his affidavit he was injured on May 9, 2010, at the restaurant when he tripped over a pan left on the floor.[2] (Pl.'s Opp. Ex. 1.) The next morning he visited his doctor and received two prescriptions, but reported for work that same day for his scheduled shift. He stated he requested to leave early, but his request was denied. He also reported for work on May 11, despite his continued pain, and his request to leave early that day was also denied. His next scheduled day to work was May 14, but he stated he was unable to work because of his pain. On May 15, he visited his doctor, who prescribed stronger medicines and who provided Dawson with a note. Dawson took the note to the restaurant and handed it to a kitchen manager, informing him of his fall on May 9 and his injuries. He visited his doctor again on May 20. Dawson stated he underwent physical therapy until in or around July 2010, and he was under the care of an orthopedist until in or around July 2010.

A reasonable jury could find from this evidence that Dawson was incapacitated for more than three days. If so, then he would seem to have no trouble satisfying the definition of treatment and, by extension, the definition of serious health condition. However, the Court also notes that no discovery has occurred in this case, and fully developed evidence may or may not

---

[2] Dawson and the restaurant employees dispute whether he notified the restaurant of his fall, and they further dispute whether he notified the restaurant on May 14 and 15 of his inability to work.

compel a conclusion of incapacity of more than three days.  As with the prior counts, summary judgment is not appropriate at this stage of the proceedings.

### B. Notice to Defendant

Defendant argues Dawson failed to provide timely and adequate notice to it that would trigger any obligation by it under the FMLA.  The content of the notice required of an employee in the event of an unforeseeable need for absence is addressed in 29 C.F.R. § 825.302(c), which provides in pertinent part:

> An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave.  Depending on the situation, such information may include that a condition renders the employee unable to perform the functions of the job; that the employee is pregnant or has been hospitalized overnight; whether the employee or the employee's family member is under the continuing care of a health care provider; if the leave is due to a qualifying exigency, that a covered military member is on active duty or call to active duty status, and that the requested leave is for one of the reasons listed in § 825.126(a); if the leave is for a family member, that the condition renders the family member unable to perform daily activities, or that the family member is a covered servicemember with a serious injury or illness; and the anticipated duration of the absence, if known. When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA.

As for the timing of the notice, the federal regulations state that, if 30 days' notice is not practicable, then notice must be given as soon as practicable.  29 C.F.R. § 825.302(a).  "As soon as practicable" is defined to mean

> as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case.  When an employee becomes aware of a need for FMLA leave less than 30 days in advance, it should be practicable for the employee to provide notice of the need for leave either the same day or the next business day.  In all cases, however, the determination of when an employee could practicably provide notice must take into account the individual facts and circumstances.

29 C.F.R. § 825.302(b).

Given the individual facts and circumstances presented at this early stage of litigation, it would be reasonable for a jury to conclude that Dawson complied with the notice requirement of the federal regulations. This is particularly so in light of one circumstance. The Court has been provided by Defendant with a copy of its employee handbook that, presumably, was in effect during the time period in issue. Having looked at that handbook, the Court cannot conclude that Dawson was sufficiently informed by Defendant of his FMLA rights and responsibilities before the need for leave arose. According to the federal regulations, a written employee handbook or other written guidance to employees must include the "general notice" explaining the FMLA's provisions and providing information concerning the procedures for filing complaints of violations of the FMLA with the Department of Labor's Wage and Hour Division. 29 C.F.R. § 825.300(a)(1), (3). To meet the requirements of the regulation,

> employers may duplicate the text of the notice contained in Appendix C of this part or may use another format so long as the information provided includes, at a minimum, all of the information contained in that notice.

29 C.F.R. § 825.300(4).

The text of the notice contained in Appendix C is quite lengthy and includes much more than what is contained in the employee handbook. (*See* Def.'s Mot. Ex. 1 at 15.) If Defendant never complied with the governing law on providing notice to Dawson of his FMLA rights and responsibilities, then that circumstance would seem to be in Dawson's favor on the question of whether he properly notified Defendant of his need for FMLA leave. This matter will also benefit from further factual development and may not presently be resolved by summary judgment.

## *VI. Preclusive Effect of State Administrative Agency Determination*

Defendant's last argument is that it is entitled to summary judgment on Counts I, III, V, and VI because the undisputed facts from a proceeding before a hearing examiner in the appeals

division of the Maryland Employment Security Administration ("MESA") established that Plaintiff voluntarily quit his employment with Defendant. Although cited by neither party, the Fourth Circuit's decision in *Ross v. Commc'n Satellite Corp.*, 759 F.2d 355 (4th Cir. 1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), governs this issue.

In *Ross*, the Court noted that under 28 U.S.C. § 1783, the "full faith and credit" law, federal courts must give preclusive effect to state court judgments when the state courts themselves would do so. 759 F.2d at 360. Continuing in its analysis of Maryland case law, the Court concluded that preclusive effect should not be given to the findings of the MESA Appeals Referee when later relied upon in a federal discrimination case. *Id.* The guiding principle employed by Maryland courts is that a judicial determination by an administrative agency is not binding upon another adjudicator "'seeking to determine an apparently identical issue under a different statute' so long as there exist 'substantial differences between the statutes themselves.'" *Id.* at 361-62 (quoting *Cicala v. Disability Review Board for Prince George's County*, 418 A.2d 205, 211-12 (Md. 1980)). The Court found,

> Title VII and the Maryland Unemployment Insurance Law cannot be construed as identical under the stringent analysis Maryland law requires. The purposes of the two statutes are unrelated. . . . Title VII aims to "achieve equality of employment opportunities and remove barriers that have operated in the past." By contrast, the Unemployment Insurance Law concerns "persons unemployed through no fault of their own."

759 F.2d at 362 (citations omitted).

Further, the Court said, "[W]hile a Maryland administrative adjudicator is concerned with forbidden *conduct* on the part of the employee, Title VII directs the factfinder's attention to a forbidden *motive* on the part of the employer. Such distinctions are meaningful because Maryland law makes them so." *Id.*

In Dawson's case, this Court has no difficulty concluding that disability discrimination laws are also meaningfully distinctive from Maryland's laws pertaining to unemployment compensation. Thus, no preclusive effect will be accorded the MESA determination in this case.

## *VII. Conclusion*

For the foregoing reasons, Defendant has not shown it is entitled to summary judgment. Accordingly, the motion (ECF No. 10) is DENIED.

DATED this 8th day of February, 2012.

BY THE COURT:

/s/
James K. Bredar
United States District Judge